## W. H. HAYS v. C. C. & H. MINING and MILLING COMPANY, Appellant.

### Division One, March 31, 1910.

1. **SUITS: Filing Fee: Unconstitutional Tax.** The Act of 1901, requiring the clerk of the circuit court of Jasper county to tax and collect a docket fee of three dollars in each case filed in said court, and to pay the same into the county treasury, is unconstitutional and void, as imposing a tax for a general public purpose; and a judgment based solely upon a failure to pay such filing fee cannot stand.

2. ———: ———: **Trial by Jury.** Said act is not violative of that provision of the Constitution which guarantees the right of trial by jury in certain cases.

3. ———: ———: **Due Process, etc.** Nor does said act deprive a person of life, liberty or property without due process of law. Its only effect is to close the door of the circuit court to all persons who demand that justice be administered to them, until each pays three dollars into the county treasury, and that simply compels them to purchase justice, which the Constitution prohibits.

4. ———: ———: **Special Law.** An act which requires the clerk of the circuit court "in all counties of this State which now constitute or may hereafter constitute a separate judicial circuit with two judges of the circuit court and having no criminal court" to tax and collect a docket fee of three dollars in each case filed therein, is violative of that part of section 53 of article 4 of the Constitution of Missouri which prohibits the enactment of special and local laws where a general law could be made applicable. At the time of its enactment (and at the present time) there was only one county to which the act could apply, namely, Jasper, and it was clearly intended to apply to that county alone.

5. ———: ———: ———: "May Hereafter Have." Nor do the words "may hereafter constitute a separate judicial circuit" make the act any the less local and special, for the reason that, by no natural process, but only by legislative act, can a county ever have two judges of the circuit court, or a separate criminal court.

Appeal from Jasper Circuit Court.—*Hon. Howard Gray,* Judge.

REVERSED AND REMANDED.

*W. R. Robertson* for appellant.

The act complained of (Laws, 1901, p. 115), undertakes to tax litigants in the circuit court of counties composing a circuit, having two judges and no criminal court, three dollars which shall be paid into the county treasury. The act did not at the time of its passage, never has and likely never will, apply to any other county in the State than Jasper county. It seeks to fix the price to be paid the county of Jasper for admission to its circuit court. It attempts to deprive an appellant from a justice of the peace court, and other courts, of the right to a trial by jury, unless the price of admission is paid. It denies appellants from a justice of the peace court, and other courts, and litigants in the circuit court, due process of law. Even if otherwise valid, it exacts a tax for the county in a manner that could be accomplished by a general law. The Legislature, by this act, attempts to levy a tax on the litigating citizens of Jasper county, while if such a tax could be exacted it would have to be done by a general and uniform law applicable to the same class of subjects within the State. By this act the General Assembly undertakes to impose a tax upon the inhabitants of Jasper county directly, when the only tax which can be legally levied on them is such as the General Assembly may, by general law, author-

227 Sup—19

ize the county to levy. Constitution, art. 2, secs. 10, 28 and 30, art. 4, sec. 53, art. 10, secs. 3 and 10; Fourteenth Amendment, Federal Constitution; State ex rel. v. Messerly, 198 Mo. 351; State ex rel. v. Ashbrook, 154 Mo. 374; Lumber Co. v. Railroad, 216 Mo. 658; State ex rel. v. Turner, 210 Mo. 77; Henderson v. Koenig, 168 Mo. 356; State v. McCarver, 113 Mo. 602; Cooley's Const. Lim. (7 Ed.), p. 713; Egyptian Levee Co. v. Hardin, 27 Mo. 495.

WOODSON, J.—The only questions involved in this controversy are propositions of law.

The respondent is not represented in this court, and, therefore, the cause was submitted upon the abstract of the record, statement of the cause and brief of appellant.

The statement of the cause made by counsel for appellant fairly presents the facts of the case, and sufficiently outlines the legal propositions involved to enable the court to grasp the case presented for determination, which is as follows:

"Plaintiff commenced his action against defendant before a justice of the peace of Jasper county to recover a judgment for seventy-five dollars, which purpose he accomplished on December 12, 1906; on the same day defendant perfected its appeal to the circuit court and on the next day the justice lodged his transcript in the office of the circuit clerk. The appeal was, therefore, returnable to the January term, 1907, of the circuit court; the defendant having failed to pay the so-called filing fee of three dollars sought to be exacted by the act of the General Assembly (Laws, 1901, p. 115), the plaintiff on the 4th day of the January term of said court filed his motion to affirm the judgment of the said justice of the peace for the sole reason that defendant had not paid said fee of $3. To this motion of plaintiff, defendant filed its countermotion, alleging, in opposition to said motion

of plaintiff, the unconstitutionality of said act in that it was in conflict with and repugnant to sections 10, 28 and 30 of article 2 of the Constitution of Missouri, which provides that our courts shall be open to every person and that justice shall be administered without sale, that the right to trial by jury shall remain inviolate and that no person shall be deprived of life, liberty or property without due process of law; section 53 of article 4, which provides that the General Assembly shall not pass any local or special law in cases where a general law could be made applicable; sections 3 and 10 of article 10, which provides that taxes may be levied and collected for public purposes only, that they shall be uniform upon the same class of subjects within the territorial limits of the authority levying the same, and that they shall be levied and collected by general laws, and that the General Assembly shall not impose taxes upon counties, or the inhabitants thereof, for county purposes, but may by general laws vest in the corporate authorities power to assess and collect taxes for such purposes, and violates section 1 of article 14 of the amendments to the Constitution of the United States, which prohibits any State from making or enforcing any law which shall deprive any person of life, liberty or property without due process of law, and from denying to any person within its territorial jurisdiction equal protection of the laws. Defendant also asked in its counter-motion that the motion of plaintiff be stricken from the files and for naught held and that the said cause be set down for trial.

"Defendant's counter-motion was overruled, plaintiff's motion was sustained, to all of which defendant excepted, and judgment was rendered and entered by the circuit court affirming the judgment of said justice of the peace, and a motion was within four days thereafter filed by defendant to set aside this judgment, which was overruled, and defendant excepted, and thereupon an appeal was taken to this court.

"We do not question the right of the circuit court to affirm a judgment of a justice of the peace, where the appellant fails to pay the so-called filing fee on or before the 2d day of the return term of the appeal, if the act exacting the fee is valid."

The Act of the Legislature before referred to reads as follows:

"Section 1. In all counties in this State which now constitute or may hereafter constitute a separate judicial circuit with two judges of the circuit court and having no criminal court, the circuit clerk shall tax and collect a docket fee of three dollars in each case filed in said court, which fee shall be collected at the time of filing such case, and shall be paid by the party instituting such suit or filing a transcript on *certiorari* or appeal. The amount of such docket fee shall be taxed in favor of the party paying the same as other costs in said case: Provided, that nothing in this act shall be construed to require the payment of said docket fee in any criminal proceeding or in prosecutions for a violation of any municipal ordinance; and provided further, that in suits for delinquent taxes, the prepayment of said docket fee shall not be required, but the same shall be taxed and collected as other costs in such cases.

"Section 2. The docket fee so collected shall be by said clerk reported to the county court of said county quarterly, and by him paid into the county treasury."

I. The first insistence of counsel for appellant is, that this Act of 1901, before set out, is violative of sections 10, 28 and 30 of article 2; section 53 of article 4; and sections 3 and 10 of article 10 of the Constitution of Missouri, which read as follows:

"Sec. 10. The courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right

and justice should be administered without sale, denial or delay.

"Sec. 28. The right of trial by jury, as heretofore enjoyed, shall remain inviolate; but a jury for the trial of criminal or civil cases, in courts not of record, may consist of less than twelve men, as may be prescribed by law. Hereafter, a grand jury shall consist of twelve men, any nine of whom concurring may find an indictment or a true bill.

"Sec. 30. That no person shall be deprived of life, liberty or property without due process of law."

Section 53 of article 4, among other things, provides that "in all other cases where a general law can be made applicable, no local or special law shall be enacted; and whether a general law could have been made applicable in any case is hereby declared a judicial question, and as such shall be judicially determined, without regard to any legislative assertion on that subject."

Sections 3 and 10 of article 10 read as follows:

"Sec. 3. Taxes may be levied and collected for public purposes only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and all taxes shall be levied and collected by general laws.

"Sec. 10. The General Assembly shall not impose taxes upon counties, cities, towns or other municipal corporations or upon the inhabitants or property thereof, for county, city, town or other municipal purposes but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes."

We will consider these constitutional questions in the order above suggested.

Counsel for appellant contends, in brief, that this Act of 1901 seeks to fix a price which all litigants must pay who institute suits in the circuit court of Jasper county, in consideration for the right to sue, and to

have their rights and interests adjudicated therein; all in violation of said section 10 of article 2, which provides, that the courts of justice shall be open to all where right and justice shall be administered without sale, etc. In other words, the act, in violation of the Constitution, closes the doors of courts of justice against litigants until the three dollars mentioned in the act are paid to the clerk of the court for the privilege of bringing a suit and having it determined by the court of that county; or, to express the idea in another form, it is tantamount to a sale of justice, in violation of the Constitution of the State.

While the respondent, as before stated, is not represented in this court, still we suppose his position below was that the fee of three dollars, required by said act to be paid to the clerk in each case filed in the circuit court of that county, was a deposit of so much money for costs to be taxed as such in the case in favor of the party paying it.

Counsel for appellant, however, contends that such insistence is unsound, for the reason that the three dollars paid to the clerk is not in fact applied to the payment of the costs of the case, but is, under the second section of said act, paid into the county treasury of the county, and thereby becomes a part of the general revenue of the county, and may be used for any purpose to which the county court may choose to apply it; and is, therefore, in fact a general tax, collected under the name and guise of costs.

In support of that contention counsel rely upon the following authorities: Egyptian Levee Co. v. Hardin, 27 Mo. l. c. 496; Cooley's Constitutional Limitations (7 Ed.), p. 678; State ex rel. v. Ashbrook, 154 Mo. 375.

The first case relied upon, as supporting appellant's position, involved the validity of an assessment of special taxes levied against certain lands for benefits received. In order to determine the question, it

was necessary for the court to differentiate between general taxes and special benefits assessed in such cases; and in defining the former, the court said: "Where the money raised by the tax goes into the State treasury, or the county treasury, or the general fund of some city or town, and is applicable to any purpose to which the legislative body of the state, county or town may choose to apply it," is a general tax. And Judge COOLEY, on page 678 of his work on Constitutional Limitations, says: "Taxes are defined to be burdens or charges imposed by the legislative power upon persons or property, to raise money for public purposes." And on page 713, the same distinguished author states that: "Every burden which the State imposes upon its citizens with a view to a revenue, either for itself or for any of the municipal governments, or for the support of the governmental machinery in any of the political divisions, is levied under the power of taxation, whether imposed under the name of tax, or under some other designation."

Much light will be shed upon the character of this three dollars required to be paid by the Act of 1901 by a short review of the history of the circuit court of Jasper county, and the manner in which the salaries of the judges thereof were paid. For several years prior to the year 1901 the circuit court of Jasper county was composed of that county only, and had but one judge, and, consequently, during those years it alone came within the provisions of sections 9702, 9703 and 9704, Revised Statutes 1899, which read as follows:

"Sec. 9702. In all counties in this State which now constitute, or may hereafter constitute, a separate judicial circuit, with only one judge of the circuit court therein, the circuit clerk shall tax and collect, as other costs are taxed and collected, a filing fee of two dollars in each case filed in the circuit court.

"Sec. 9703. The fund created by section 9702 shall be known as the 'Judicial salary account,' and

shall be paid to the circuit clerk when collected, and shall be paid by the said clerk to the judge of said court quarterly, and such quarterly payments shall be in the sum of three hundred dollars, and any deficiency in any quarterly payment may be paid out of the surplus in any succeeding quarter of the term of the judge: Provided, that nothing in this or the preceding section shall be construed as authorizing the payment of any such additional compensation to the said judge out of any State, county or public treasury; and provided further, that in no event shall the State, or any county composing said circuit, or any city in said county, be required to pay such filing fee.

"Sec. 9704. In all counties which contain, or may hereafter contain, over fifty thousand inhabitants, and whose taxable [assessed] wealth exceed the sum of twenty-five million dollars, and which is adjoining a city which now contains, or may hereafter contain a population of over three hundred thousand inhabitants, there shall be paid by such county or counties to the circuit judge of such county the sum of one hundred and twenty-five dollars per month, in addition to the salary now provided by law, and to the prosecuting attorney of such county the sum of fifty dollars per month, in addition to the salary and fees now provided by law."

According to these sections, the two dollars thereby authorized to be taxed and collected in all suits instituted in that court and directed to be paid to the judge thereof as a part of his salary, was just as clearly a tax or license fee imposed upon the litigant by the State, for the right and privilege of suing and prosecuting his suit, as was the money out of which the balance of his salary (mentioned in section 9704) was paid. Both were assessed and collected under the taxing power of the State; and both were devoted to the discharge of governmental burdens incident to the administration of the law, to-wit, the judge's salary.

So it is seen from this, that all persons who began suits in that court prior to 1901 were taxed two dollars more for the right to do so than were litigants in all other courts of the State.

That condition of things continued in that circuit until the enactment of another Act of 1901. [Laws 1901, pp. 120 to 122, both inclusive.] The latter act, among other things, added another division to the circuit court of Jasper county, and gave it an additional circuit judge; and the third section thereof provides how the salaries of both judges are to be paid. That section reads as follows:

"Sec. 3.    Whereas, the said judge of said court, by virtue of the provisions of an act entitled, 'An act to provide additional compensation for judges of circuit courts in all circuits composed of one county and having one judge,' approved March 18, 1895, continuously since his first election in 1896, has received and is now receiving the sum of three hundred dollars per quarter, or twelve hundred dollars per annum from the fund provided for by said act. And whereas said act approved March 18, 1895, will cease to apply to Jasper county and the Twenty-Fifth Judicial Circuit on the taking effect of this act; therefore, each of said judges shall receive for his services a salary at the rate of thirty-two hundred dollars per annum, two thousand dollars of which shall be paid out of the State treasury as now provided by law, and twelve hundred dollars of which shall be paid out of the treasury of Jasper county in quarterly installments. The county court of said county shall cause the same to be punctually paid."

It will be observed that this section does not give to these judges the two dollars mentioned in section 9702 and 9703, Revised Statutes 1899, as was previously paid to the former judge of that circuit. By this section of the latter act each judge of that court is to be paid annually a salary of $3200; and evidently for

the purpose of recouping the State and county of Jasper for this $3200 additional expense required by this act to be paid annually to this additional judge, the Legislature passed the former Act of 1901—the one under consideration—requiring the clerk to tax and collect the sum of three dollars in each and every case filed in said court, and to pay it into the county treasury, which, as shown by the record, would in all probability amount to as much or more than this additional salary required to be paid to the additional judge.

If we construe this act in the light of the rules or definitions before announced by this court and by Judge Cooley, then we must hold that the three dollars required to be paid to the clerk before suit can be commenced in the circuit court of Jasper county is a tax imposed upon all persons filing suits therein for the right to so institute and prosecute suits in that court, for the reason the second section of the act in express terms requires the clerk to pay the same into the county treasury; and after being paid therein, it may be used for any purpose to which the county court may see proper to apply it, as it has the right to do, according to the rule stated in the case of Egyptian Levee Co. v. Hardin, supra, and as announced by Judge Cooley in the first quotation before taken from his valuable treatise.

It is thus seen that the three dollars imposed upon the litigants for the right to institute and prosecute actions in that court is nothing more nor less than a burden which the State has imposed upon those citizens, with a view of raising revenue for the support of the State and county government, under the name and guise of a docket fee "to be taxed and collected in the case;" but in reality it is a tax, pure and simple, imposed and collected for the right to sue and prosecute in the courts of that circuit.

If this act had required the clerk to retain the three dollars so taxed and collected until the termination

of each case filed therein, and in case the plaintiff was successful, then to return it to him, but if unsuccessful, then to apply it on the costs taxed against him instead of providing, as it does, for the clerk to pay it into the county treasury, where the plaintiff could never receive any benefit whatever therefrom, then quite a different proposition would be presented for determination. Under such an act the deposit of three dollars would clearly be a deposit to secure costs in the case; but as the act actually reads, it is clearly a tax, as before stated, imposed upon all who institute suits in the circuit court of Jasper county, which must be paid before the courts of justice of that county will be opened unto them; and, if this is a valid act, then and not until then can they legally demand of the courts that "right and justice be administered" unto them "without sale, denial or delay," as is guaranteed to all by said section of the Constitution, and which is enjoyed by all other citizens of the State.

We, therefore, hold said act to be unconstitutional, null and void, for the reasons before stated.

II. Counsel for appellant also insists that said act of the Legislature is violative of section 28 of article 2. That section of the Constitution guarantees the right of trial by jury in certain cases, but counsel for appellant has not suggested in what manner the act in question violates said section of the Constitution, and we are unable to see any repugnancy between the two. We, therefore, hold the act does not violate said section 28 of article 2 of the Constitution.

III. It is next insisted that said act is invalid because it is violative of section 30 of article 2, before set out. In substance, that section provides that a person shall not be deprived of life, liberty or property without due process of law. Counsel has likewise omitted to point out in what particular said act conflicts with this section of the Constitution. We are

unable to see in what manner it deprives appellant of his life, liberty or property without due process of law. The only effect this act has is to close the door of the circuit court of Jasper county to all who demand that justice be administered to them until each of them pays into the county treasury the sum of three dollars. That is not depriving appellant of his property without due process of law, but compels him to purchase justice, which the constitutional provision before mentioned provides shall not be sold.

We are of the opinion, therefore, that said act does not offend against said section 30 of the Constitution.

IV.  Counsel contends that this act violates section 53 of article 4 of the Constitution, which prohibits, among other things, the enactment of special and local laws where a general law could be made applicable, etc.

As to this contention, we believe it is well taken, for the reason that the act is limited in its operation to all counties "which now constitute or may hereafter constitute a separate judicial circuit with two judges of the circuit court and having no criminal court." At the time of the passage of this act and at the present time Jasper county is the only county in the State possessing all of the requisites mentioned in the act, and for that reason the act can only apply to that county. If the act had stopped with the clause which limited its operation to counties "now constituting a separate judicial circuit," and had not contained the additional words "or may hereafter constitute such a circuit," then, according to all of the authorities, it would violate said section of the Constitution. [State ex rel. v. Turner, 210 Mo. 77, and cases cited.]

The case just cited involved the constitutionality of an act prohibiting the sale of intoxicating liquors within five miles of any State educational institution which now has enrolled fifteen hundred or more stu-

dents.  In considering that statute, the court said: "The agreed statement of facts shows that the State University is located in Columbia, and that it was the only State educational institution which had enrolled fifteen hundred or more students at the time said act went into effect.  According to this agreement the act could only apply to a section of country ten miles in diameter around the University, because there is no other State educational institution which had at the time fifteen hundred or more enrolled students; nor could the act ever apply in the future to other localities of the State, even though some one or more of the State educational institutions should have an enrollment of fifteen hundred students, for the reason that the act in express terms limits its operations to such localities as then had State institutions of learning, with an enrollment of fifteen hundred or more students.  In other words, this act only applies to Columbia, and can never apply to other portions of the State although the same conditions may subsequently exist  there. This being true, the act is clearly local and special in its operation; as much so as if it had named Columbia in express terms and then provided that no license should thereafter be granted to any person to keep a dramshop within five miles thereof."

The question now presents itself, do the words "or may hereafter contain such a circuit" differentiate the act in question from the act mentioned in the case last cited?  There is a class of cases in this State which hold valid those statutes which by their terms are made applicable to all counties or municipalities which had a certain number of inhabitants, stated therein, at the time of their enactment, and which also provided that they were to apply to all counties or municipalities which might thereafter obtain the specified number.  The following cases belong to that class:  State ex rel. v. Bell, 119 Mo. 70; State ex rel. v. Marion County Court, 128 Mo. 427; State ex inf. v. Continental To-

bacco Co., 177 Mo. 1. There are many others to the same effect. But in our opinion those statutes are not like the act under consideration. Statutes of that character deal with the citizens, the persons of all counties and municipalities which have the stated number of inhabitants or which may hereafter have that number. In the very nature of things the population of those counties and municipalities would increase in numbers until those counties which did not have the requisite number at the time the statutes were enacted would probably have them some time in the future; and as soon as that number was reached in any county or municipality, it would be subjected to the operation of all such statutes. But that is not true in the case at bar. Here the act deals with courts, institutions of the State, and not persons. Courts have no power to increase or decrease their number in any county or municipality; and it would be the merest conjecture to say that the Legislature might organize another separate judicial circuit composed of only one county without giving it a criminal court, and provide two judges for said circuit court. This act does not even deal with conditions, courts or institutions, much less with property or persons, but with mere abstract possibilities, which are clearly beyond the legislative domain.

The words of the act, "or may hereafter constitute a special judicial circuit," mean the same as though the act had read as follows: "In all counties in this State which now constitute, and in all counties in which the Legislature may hereafter inaugurate a separate judicial circuit with two judges of the circuit court, and having no criminal court, the clerk shall tax and collect a docket fee of three dollars," etc.

If the act, as passed by the Legislature, is valid, and inoffensive to the constitutional provision mentioned, then clearly the act before suggested would also be valid and inoffensive thereto had it been enacted in the form above stated, for the simple reason that the

Legislature alone could create such additional circuit courts; and if the lawmakers of the State can, by making mere reference in an act to the power of subsequent Legislatures to enact laws similar to the one containing such reference, thereby convert a confessedly local and special law into a general law, then all distinction between local and general laws is completely destroyed, for the obvious reason that subsequent Legislatures derive their power and authority to enact laws from the Constitution of the State, and not from any previous Legislature; and the reference made by one General Assembly to the powers of succeeding ones adds nothing whatever to their power or authority.

A question very similar to this was involved in the case of State ex rel. v. Messerly, 198 Mo. 351. There section 5005, Revised Statutes 1889, prescribed fees which should be allowed justices of the peace throughout the State, for the several duties they might perform, and they were entitled to no other compensation: "The amendment to that section in 1899, was in these words: 'Provided, that in cities having a population of fifteen thousand and under thirty-five thousand and lying wholly within one township, except cities operating under special charters, all fees collected by justices of the peace in criminal cases shall be turned into the county court, and said court shall deposit said fees with the county treasury. The justices of the peace shall account to the county courts and turn in all such fees at each regular meeting of the court. In lieu of all fees in criminal cases the county court shall allow the justices of the peace the sum of fifty dollars per month.' [Laws 1899, p. 215.]" In the discussion of that amendment, Judge GANTT, in his usual clear and forceful manner, in speaking for the court, said:

"This amendment, if valid, went into effect August 20, 1899. In 1901 the section was further amended

so as to make the salary seventy-five dollars a month instead of fifty dollars. [Laws 1901, p. 174.]

"The county court of Pettis county accepted the amendment of 1899 as valid and controlling and began paying the justices of the peace for Sedalia township salaries from September 1, 1899, instead of allowing them fees under the general law in force prior to the enactment of the amendment of 1899.

"The defendants as judges of the county court now deny that relator is entitled to any fees, but must be content with the salary paid him by the county court for the time for which he now claims fees.

"It is conceded by all parties that the Act of 1899, amending section 5005, Revised Statutes 1889, did not and could not apply to any city in Missouri except Sedalia. No other city was in the special situation at that time, nor likely to be. The act was intentionally drawn to fit the peculiar circumstances surrounding Sedalia and to exclude all other cities in the State of like population. Section 53 of article 4 of the Constitution of Missouri provides: 'The General Assembly shall not pass any local or special law . . . regulating the fees or extending the powers and duties of aldermen, justices of the peace, magistrates or constables.' The same section after enumerating divers other cases in which no special or local law shall be passed, further provides: 'In all other cases where a general law can be made applicable, no local or special law shall be enacted.'

"Few of the provisions of our organic law are so eminently wise and salutary as this last-quoted section of the Constitution. It is of the highest interest to the State that its laws should be general and operate as far as possible equally in all sections of the State and upon all subjects of legislation. This court has again and again defined what is a general and what is a special law, but in practical legislation it would be hard to define in one section a more pronounced example of

each than is found in section 3261 since the amendment of 1899. The original section as it stood prior to the addition of that proviso, was a general law which affected every justice of the peace in the State, whereas, the proviso was drawn with the greatest labor to insure that it should apply to but one township in the State, to-wit, Sedalia township. Notwithstanding the language of the act purports in some respects to be a general law, the numerous exceptions in the proviso of 1899 pared it down until it was impossible for it to have the slightest effect on the fees and compensation of justices of the peace in any other township in the State. Indeed, the disguise is so flimsy that it needs neither argument nor citation of authorities to show that the proviso of 1899 was and is a mere local law applicable and intended to apply to Sedalia township alone, and hence is in direct conflict with section 53 of article 4 of the Constitution hereinbefore recited. The duties of a justice of the peace in a township containing a city of the specified inhabitants named in the act of 1899 are identical in every particular with the duties of a justice of the peace of a township containing a city of like inhabitants operating under a special charter, or a city not lying wholly within one township, so that the act might as well have applied to every city of a certain specified population containing a certain number of churches and school houses. We think the circuit court properly held that the proviso of 1899 to section 3261, Revised Statutes 1899, was unconstitutional as a local and special law regulating the fees of justices of the peace.''

I will use against this act the same argument, and as near as may be the same language which Judge GANTT used against this amendment, to-wit: Notwithstanding the language of this act purports in some respects to be a general law, yet the various provisions thereof designating the courts to which it should ap-

227 Sup—20

ply pared it down until it was impossible for it to apply to or embrace any other circuit court than that of Jasper county, for the reason this court will take judicial notice of the fact that no other circuit court exists in this State, under the conditions stated in this act. Indeed, the disguise is so flimsy that it needs neither argument nor citation of authorities to show that the Act of 1901 was and is a mere local law applicable and intended to apply to the circuit court of Jasper county alone, and hence it is in direct conflict with section 53 of article 4 of the Constitution hereinbefore recited.

While under this act Jasper county has no criminal court, yet, according to its provisions, the duties of the two divisions of the circuit court thereof, as well as those of the judges, are identical in every particular with the duties of all circuit courts, and with the judges thereof, in all other counties of the State, which have no criminal court.

We are, therefore, clearly of the opinion that the Act of 1901 is unconstitutional, as a local and special law regulating the taxation and collection of a docket fee of three dollars in each and all cases filed in the circuit court of Jasper county, which, as shown by the record, aggregate annually several thousand dollars, a burden imposed upon the citizens of no other county in the State.

V. The final insistence of counsel for appellant is that the act in question is void because it violates sections 3 and 10 of article 10 of the Constitution, before set out. Counsel, however, have not suggested any reason whatever in support of their insistence, nor have they cited any authorities upholding their views in that regard. A question of such importance should not be decided without proper investigation and until after due deliberation, especially when a decision of that question is not necessary for a proper determina-

tion of the cause. We, therefore, express no views upon the last proposition presented, except as is incidentally stated in the first paragraph of this opinion.

For the reasons before stated, the judgment of the circuit court is reversed, and the cause remanded for a new trial.

*Valliant, J.*, concurs; *Graves, J.*, concurs in all except as to what is said as to the sale of justice, and concurs in the result; *Lamm, P. J.*, dissents.