Oscar Neal **FLETCHER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. B–1165.

Supreme Court of Texas.

March 26, 1969.

Rehearing Denied April 23, 1969.

H. E. Tarpley, Dallas, for appellant.

Crawford C. Martin, Atty. Gen., Larry J. Craddock, Asst. Atty. Gen., Austin, for appellee.

SMITH, Justice.

This is a direct appeal, under the provisions of Article 1738a, Vernon's Annotated Civil Statutes. The appeal is from an order of the 116th Judicial District Court of Dallas County, Texas, in which Oscar Neal Fletcher, the appellant, was permanently enjoined upon petition of the appellee, the State of Texas, from administering lie detection examinations, from publicly professing to be a polygraph examiner (or lie detector operator) and from administering or offering to administer examinations of any type for the purpose of verifying the truth of statements, without first complying with the

provisions of Article 2615f–2, Vernon's Annotated Civil Statutes,[1] entitled the Polygraph Examiners Act.

The main contention of the appellant is that the trial court erred in not holding Article 2615f–2, Vernon's Annotated Civil Statutes, unconstitutional, in that the title of the Act does not fully disclose the contents of the Act; and therefore, does not put the Legislature, which passed the Act, or the public on notice that the Act applies not only to polygraph examiners but also to all persons who use any device or instrument for the purpose of verifying the truth of statements. The appellant argues specifically, that the title of the Act is insufficient under Article III, Section 35, of the Texas Constitution, Vernon's Ann.St.,[2] to support the definition of polygraph examiner which is set forth in Section 2(5) in the body of the Act, i. e., "any person who uses any device or instrument to test or question individuals for the purpose of verifying truth of statements."

The title to the Polygraph Examiners Act reads as follows: "An act relating to the licensing of polygraph examiners; creating a Polygraph Examiners Board; granting certain powers to the Polygraph Examiners Board; establishing minimum instrumentation requirements; providing for penalties for violation of provisions of this Act; and declaring an emergency." [Emphasis added.]

The case was tried before the court without a jury, upon the following stipulated facts:

"1. This injunction proceeding rests directly upon Article 2615f–2, Vernon's Civil Statutes, generally known as the Texas Polygraph Examiners Act. The applicability of Article 2615f–2, V.C.S., if any, to the activity of defendant as hereinafter set forth provides the sole basis on which the injunction is sought.

"2. Plaintiff, the State of Texas, has brought this action by and through Crawford C. Martin, Attorney General of Texas and those Assistant Attorneys General of Texas whose names appear of record, and this action was further brought at the specific instance and request of the Secretary of the Board of Polygraph Examiners of the State of Texas, and the Secretary in making such request was acting at the direction of a majority of the Board.

"3. Defendant, Oscar Neal Fletcher, has offered 'lie detection services' within the State of Texas for a continuing period in excess of ten years and was offering 'lie detection services' on the day upon which Article 2615f–2 became a portion of the law of this state and until the date upon which a temporary restraining order was issued in this cause, he derived a substantial portion of his total income from the sale of 'lie detection services' and (in all reasonable

---

1. Vernon's Annotated Civil Statutes, Article 2615f–2

   Section 2(5) "polygraph examiner" means any person who uses any device or instrument to test or question in-dividuals for the purpose of verifying truth of statements.

   Section 3. Every polygraph examiner shall use an instrument which records visually, permanently, and simultane-ously: (1) a subject's cardiovascular pattern and (2) a subject's respiratory pattern. Patterns of other physiological changes in addition to (1) and (2) may also be recorded.

   Section 6. It shall be unlawful for any person, including a city, county or

state employee, to administer polygraph examinations or attempt to hold himself out as a polygraph examiner without a license approved by the board and is-sued by the board.

2. Article III, Section 35, Texas Constitution

   "No bill * * * shall contain more than one subject, which shall be ex-pressed in its title. But if any sub-ject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed."

probability) he will continue to derive a substantial portion of his total income from the sale of 'lie detection services' in the future if the aforesaid temporary restraining order is lifted. Defendant does not use a polygraph, has not been issued a license by the Polygraph Examiners Board of the State of Texas; has not applied for such a license, and is not eligible for such a license by reason of either formal or informal education or experience in the use of polygraph equipment, nor does he hold a baccalaureate degree from a college or university accredited by the American Association of Collegiate Registrars and Admissions Officers nor has he passed an examination conducted by the Board or under its supervision to determine his competence to obtain a license to practice as a polygraph examiner.

"4. Defendant, Oscar Neal Fletcher, advertised for several years in the yellow pages of the Dallas telephone directory. In addition to a listing under 'Detective Agencies' he had in November 1965 and years prior thereto been listed under the heading 'Lie Detection Laboratories'. * * * In the November 1966 and November 1967 directories Fletcher Detective Agency was listed under the heading 'Polygraph Service'. * * * A cross reference is printed in the latest directory, being November 1967; as follows: 'LIE DETECTION LABORATORIES AND EQUIPMENT—See Polygraph Service'. * * * In this regard, testimony of representatives of the Southwestern Bell Telephone Company would establish that defendant in fact applied for listing in the yellow pages under the heading 'Lie Detection Laboratories' and that the listing was classified and published by the Southwestern Bell Telephone Company in the 1966 and 1967 directories under the heading 'Polygraph Service' *without either formal authorization or formal complaint from the defendant, save and except for a complaint made after this action was filed.*

"5. Defendant, Oscar Neal Fletcher in connection with the sale of services (as heretofore described in paragraph 3 above) operates a device or instrument for the purposes of verifying truth of statements to-wit: a machine known as the 'B & W Lie Detector'." [Emphasis added.]

■ This and other courts of Texas have been called upon many times to apply Article III, Section 35, of the Texas Constitution. It has been universally held, for example, that in determining its application, the caption of the act should be liberally construed so as to uphold its validity rather than giving the act a strict construction which would lead to striking down the act or a part thereof. Lee v. State, 163 Tex. 89, 352 S.W.2d 724, 725 (1962); Gulf Insurance Co. v. James, 143 Tex. 424, 185 S.W.2d 966 (1945). The latter decision, in recognizing the rule just stated, reaffirmed another recognized principle that the rule of liberal construction was subject to certain limitations. The Court stated that "[t]he rule of liberal construction will not be followed to the extent that it will relieve the legislature of the necessity of disclosing the real subject of the act in the title thereof, nor will it be extended so as to hold the Acts valid, the titles of which are deceptive or misleading as to the real contents of the Act."

Another rule which is pertinent here is that announced in Adams & Wickers v. San Angelo Water Works Co., 86 Tex. 485, 487, 25 S.W. 605, 606 (1894). There, the Court said: "The inquiry is not what the legislature intended to embrace in the title, but what, by the terms employed, it did, in fact, embrace. The purpose of the constitutional requirement is to give notice through the title of the bill, not only to members of the legislature, but to the citizens at large, of the subject-matter of the projected law; and thereby to prevent the surreptitious passage of a law upon one subject under the guise of a title which expresses another."

The appellant and appellee do not express a difference of opinion relative to these basic principles but do vigorously disagree as to their application to the stipulated facts.

Opposed to appellant's argument that the title of the Act does not fully disclose the contents of the Act, the appellee contends that there is a close relationship between the "polygraph", a machine which is expressly named in the Act, and the device used by appellant as a "lie detector". The term "polygraph", according to appellee, embraces all subsidiary or related instruments such as the B & W Lie Detector, admittedly used by the appellant for the purpose of verifying the truth of statements made by third parties. In this regard, the appellee reasons that the question is not whether the B & W Lie Detector machine which he [appellant] operates is, in fact, a "polygraph", but that the real question is whether the regulation of such a machine is in furtherance of the basic policy of Article 2615f–2, Vernon's Annotated Civil Statutes. When considered in this light, it is further argued that the body of the Act does not depart from the policy indicated in the caption of the Act to the extent of regulating an unrelated subject. We cannot agree with this contention.

■ The main subject of the Act is stated in the caption as being that related to the licensing of *polygraph* examiners. The expression of a purpose in the caption of an act relating to the licensing of polygraph examiners and the creation of a Polygraph Examiners Board fails to give notice that embodied in the Act is Section 2(5) which includes the regulation of all persons who use any device (such as a B & W Lie Detector) to test or question individuals for the purpose of verifying truth of statements. We therefore hold

that the language used in the title of the Act is not sufficient to properly advise the Legislature and the public as to the real subject of the Act. See Gulf Insurance Company v. James, 143 Tex. 424, 185 S. W.2d 966, 970 (1945); Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799 (1925).

■ We come now to the judgment to be entered. Where the question of the sufficiency or insufficiency of the title or caption of an act is raised by the parties, as here, we have the power to adjudicate a statute to be unconstitutional even though the entire act is not being attacked as unconstitutional. See Smith v. Decker, 158 Tex. 416, 312 S.W.2d 632 (1958), and cases therein cited. Having held that the Act is unconstitutional because the caption thereof does not fully disclose the contents of the Act, we next consider the question of whether or not there remains any portion of the Act which can be held constitutional and applicable to polygraph examiners, the subject expressly named in this title. Considering that Section 2(5) clearly indicates that the Legislature intended to regulate everyone in the field of lie detection, it cannot be presumed that the Legislature would have passed the Act without Section 2(5). See Western Union Tel. Co. v. State, 62 Tex. 630 (1884); I Cooley, Constitutional Limitations, pp. 359–368 (8th ed., 1925).

■ In making this decision, we are not unmindful of the rule that where matters in the body of the Act are not embraced in the title, the remainder of the Act is not unconstitutional unless the invalid parts are inextricably interwoven in the texture of the Act so as to render the entire Act invalid.

The judgment of the trial court is therefore reversed and the injunction is dissolved.