# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

February 21, 1991

Honorable John Whitmire
Chairman
Intergovernmental Relations Committee
Texas State Senate
P. O. Box 12068
Austin, Texas 78711

Opinion No. DM-3

Re: Constitutionality of chapter 64 of the Agriculture Code, which requires arbitration in vegetable seed performance disputes (RQ-2130)

Dear Senator Whitmire:

Your predecessor asked whether the requirements for arbitration of seed performance disputes found in chapter 64 of the Agriculture Code violate the "open courts" provision of article I, section 13, of the Texas Constitution. Article I, section 13, provides that "all courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."

Chapter 64 was adopted in 1989. Acts 1989, 71st Leg., ch. 604, § 1, at 1996-98. Section 64.002(a) states:

> When a purchaser of vegetable seed designed for planting claims to have been damaged by the failure of the vegetable seed to produce or perform as represented by warranty or by the label required to be attached to the vegetable seed under this subtitle or as a result of negligence, the purchaser must submit the claim to arbitration as provided by this chapter as a prerequisite to the exercise of the purchaser's right to maintain a legal action against the labeler, as defined by Section 19.9, Texas Administrative Code (4 TAC Sec. 19.9), or any other seller of the vegetable seed.

See also Agric. Code § 64.003 (seed container label to give notice of chapter 64 arbitration requirement).

Chapter 64 arbitration is instituted by filing a complaint and a ten dollar filing fee with the commissioner of agriculture, who refers complaints and answers thereto to the State Seed and Plant Board, which serves as the "arbitration board" in chapter 64 arbitrations. Id. §§ 64.005, 64.006(a)-(c). The arbitration board investigates complaints

referred to it and reports findings of fact, conclusions of law, and recommendations as to costs to the commissioner within sixty days of the referral or at a later date agreed to by the parties. Id. § 64.006(d).

Chapter 64 does not purport to abolish the right of seed performance disputants to obtain redress in court.   Section 64.002(a) rather establishes arbitration as a "prerequisite to the exercise of the purchaser's right to maintain a legal action." Applicable limitation periods are tolled until 11 days after the arbitration board's report is filed with the commissioner of agriculture. Id. § 64.002(b), (d).   Section 64.004 permits the arbitration report to be introduced at subsequent litigation and allows the court to give such weight to the matters in the report as it deems advisable.

The "open courts" provision of article I, section 13, of the state constitution has been considered by the Texas Supreme Court in numerous recent opinions. See, e.g., Moreno v. Sterling Drug, Inc., 787 S.W.2d 348 (Tex. 1990) two year statute of limitations on wrongful death action not in violation of open courts provision); Lucas v. United States, 757 S.W.2d 687 (Tex. 1988) (statutory cap on medical malpractice damages violated provision); LeCroy v. Hanlon, 713 S.W.2d 335 (Tex. 1986) (statutory provision for portion of court clerk filing fee going to state general revenues violated provision); Neagle v. Nelson, 685 S.W.2d 11 (Tex. 1985) (application of two-year statute of limitations on health care liability which cut off cause of action before injured party had reasonable opportunity to discover injury violated provision); Nelson v. Krusen, 678 S.W.2d 918 (Tex. 1984) (application of statute of limitations to cut off wrongful birth action before parents could have known son had disease violated provision); Sax v. Votteler, 648 S.W.2d 661 (Tex. 1983) (statute removing tolling of statute of limitations on medical malpractice actions for minors violated provision); see Linzer, *Why Bother With State Bills of Rights?* 68 Tex. L. Rev. 1573, 1592-97 (1990). The Sax majority set out the test for an open courts violation as follows:

> First, it must be shown that the litigant has a cognizable common law cause of action that is being restricted.  Second, the litigant must show that the restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute.

Sax at 666.

The majority opinions in Moreno 1990, Lucas in 1988, and LeCroy in 1986 have utilized the Sax test in determining the validity of statutes under the open courts provision, at 355, 690, and 341 respectively. But see Lucas at 716-17 (Chief Justice Phillips' dissenting opinion) (Sax test "has resulted in an almost exclusive focus on 'the extent to which the

litigant's right to redress is affected,' with an almost total disregard of 'the general purpose of the statute.'"); see also Moreno at 357; LeCroy at 343 (dissenting opinions).

We do not believe that the supreme court would find the provisions of chapter 64 on their face violative of the provision. Although the first prong of the Sax test for an open courts violation -- that the challenged statute restricts a well-recognized common law cause of action -- would appear to be met in the case of the chapter 64 arbitration requirements,[1] we do not believe that the court would find, under the second prong of the test, that the chapter 64 requirements are "unreasonable or arbitrary when balanced against the purpose and basis of the statute."

It is to be presumed that the legislature has acted with knowledge of the factual circumstances relating to an enactment, and has not acted unreasonably or arbitrarily. See 67 Tex. Jur. 3d Statutes § 134; 12 Tex. Jur. 3d Constitutional Law § 40, and authorities cited therein. The Committee on Agriculture and Livestock Bill Analysis to Senate Bill 64, the 1989 bill adding the provisions of chapter 64, set out the "background" and "purpose" of the bill. Those portions of the bill analysis read:

## BACKGROUND

In the past, some farmers have experienced dissatisfaction with various crop seeds not germinating and emerging at the percentage labeled. Usually the complaint is settled between the seller of the seed and the purchaser, with litigation resulting when the complaints cannot otherwise be settled. However, farmers and seedmen agree that litigation is not the most desirable way to settle a complaint about seed, and the farmers are often reluctant to litigate.

For many years the state of Florida has used a method of arbitration with an unbiased third party investigation and opinion. The American Seed Trade Association has recommended to each of its member states that they work to pass measures similar to Florida's[.]

---

1. As was noted in Lucas, which invalidated a cap on medical malpractice damages, a statute need not totally abolish a cause of action to run afoul of the open courts provision. Id. at 691, 692. Chapter 64, by establishing arbitration as a prerequisite to maintaining a legal action in a seed performance dispute, would appear, by delaying a disputant's access to the courts and by requiring a ten dollar filing fee, to "restrict" such a cause of action under the first part of the Sax test.

PURPOSE

The bill provides for an unbiased third party investigation by the State Seed and Plant Board of the Texas Department of Agriculture of complaints concerning seed performance.

Bill Analysis, S.B. 64, 71st Leg. (1989).

As the bill analysis indicates, Florida has had a similar statutory seed dispute arbitration requirement in effect for some years. See F.S.A. §§ 578.26, 578.27 (provisions of which were first adopted by Laws 1951, chapter 26814, section 1). The only Florida case we find that has addressed the provisions of the Florida seed dispute statute is Ferry-Morse Seed Co. v. Hitchcock, 426 So.2d 958 (Fla. 1983). The Ferry-Morse opinion responded to certified questions from the United States Court of Appeals, Eleventh Circuit. It found that a farmer's failure to first follow the requirements of the Florida seed dispute statute barred his cause of action against the seller for seed defects (but did not bar his plea of lack of consideration as a defense to the seller's action). Though it did not specifically address the issue of an open courts provision violation, we think the Ferry-Morse holding certainly suggests that the court did not think the Florida statute violative of that provision of the Florida constitution. The Florida constitution's "open courts" provision is similar to the Texas provision, and Florida courts have adopted a similar test for violations of the provision. See Kluger v. White, 281 So.2d 1, 4 (Fla. 1973) (statute must provide "a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown").

We note too that constitutional attacks on statutory arbitration requirements have generally been upheld by courts only where such statutes close the courts to litigants and make the decisions of arbitrators the final determinant of the rights of the parties. See Annotation, 55 A.L.R.2d 432, 441; New England Merchants Nat'l Bank v. Hughes, 556 F. Supp. 712, 714 (E.D. Penn. 1983); Attorney General of Maryland v. Johnson, 385 A.2d 57, 65 (Ct. App. Md. 1978); Collier & Wallis v. Astor, 70 P.2d 171, 173 (Cal. 1937).

Among Texas authorities, we find no cases which invalidate under the open courts provision requirements comparable to the non-binding arbitration requirements in chapter 64. See, e.g., Middleton v. Texas Power & Light Co., 185 S.W. 556 (Tex. 1916) (workers compensation law, in providing for determination of disputed claims by Industrial Accident Board, with right of appeal to the courts, does not violate article I, section 13, or other constitutional provisions).

It has been suggested that the non-refundable ten dollar filing fee is impermissible under LeCroy. In LeCroy the statute required a portion of the filing fee filed with the district clerk when instituting a court action to go to the state comptroller for deposit in the general revenue fund. The LeCroy majority opined that "the major defect with the filing fee is that it is a general revenue tax on the right to litigate: the money goes to other statewide programs besides the judiciary." LeCroy at 341. "[L]itigants must pay a tax for general welfare programs as a condition to being allowed their right of access to the courts. This the open courts provision prohibits." Id. at 342.

Texas courts have uniformly followed the rule that if, from a consideration of the statute as a whole, the primary purpose of a charge is the raising of revenue, then the charge is to be considered a tax. If, on the other hand, the primary.purpose is that of regulation, then the charge is to be considered a fee rather than a tax. See Hurt v. Cooper, 110 S.W.2d 896 (Tex. 1937) (and other authorities cited in Attorney General Opinion JM-963 (1988)); see also City of Fort Worth v. Gulf Refining Co., 83 S.W.2d 610, 619 (Tex. 1935) (because a charge goes into general revenue funds does not in itself resolve whether the charge is a tax or a fee).

Nothing has been brought to our attention that would suggest the ten dollar filing fee was not intended to offset the Agriculture Department's administrative costs.[2] Thus, we do not believe the fee is in the nature of a "tax on the right to litigate," such as the portion of the filing fee the LeCroy court found ran afoul of article I, section 13.

In light of the foregoing, it is our opinion that the arbitration requirements of chapter 64 do not on their face violate the open courts provision of the Texas Constitution.

We caution, finally, that application of the chapter 64 requirements in particular cases might raise questions under the open courts provision. For example, application of the requirement of section 64.006(a), that the arbitration complaint must be filed in time to permit inspection of plants under field conditions, might in particular cases be limited by the open courts provision. See, e.g., Neagle at 12 ("the open courts provision . . . protects a citizen . . . from legislative acts that abridge his right to sue before he has a reasonable opportunity to discover the wrong and bring suit").

---

2.    See the Legislative Budget Board's May 16, 1989, Fiscal Note to S.B. 64 (the bill adding the provision of chapter 64) anticipating revenues from the filing fee as $500 for each of the first five years after the bill's passage, but costs of the program as $65,165 in the first year and $55,165 in each of the succeeding years.

## SUMMARY

The requirements of chapter 64 of the Agriculture Code for non-binding arbitration of seed performance disputes do not on their face violate the open courts provision of article I, section 13, of the Texas Constitution.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY (Ret)
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

SUSAN GARRISON
Acting Chairman, Opinion Committee

Prepared by William Walker
Assistant Attorney General