**Peggy Ann GLASS and George R. Neely, Appellants,**

v.

**Dale Steen GLASS, Appellee.**

No. 6–91–042–CV.

Court of Appeals of Texas, Texarkana.

Feb. 25, 1992.

Rehearing Denied March 24, 1992.

Richard N. Countiss, Burrow & Williams, Houston, for appellants.

Thomas K. Robinson, Miller, Miller & Robinson, Gonzales, Joe H. Rentz, Rentz, Burg & Associates, Gerald P. DeNisco, Simon W. Hendershot, III, Pope, Shoemake, Selwyn, Kerr, DeNisco, Houston, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

Peggy Glass and her attorney, George Neely, appeal the imposition of sanctions against them for filing frivolous pleadings after the entry of a judgment of divorce based upon a compromise settlement agreement. The critical issues presented on this appeal are whether Peggy Glass may be barred from access to the courts of Texas, whether she may be sanctioned individually for her attorney's conduct, whether attorney's fees awarded as sanctions pursuant to Rule 13 of the Texas Rules of Civil Procedure need to be proven to be reasonable and necessary, and whether the sanctions ordered are excessive in light of the evidence.[1] We hold that the prohibition against court proceedings is constitutionally infirm, that a party should not be sanctioned for her attorney's conduct, that attorney's fees may be awarded as sanctions

---

1. Tex.R.Civ.P. 13, entitled Effect of Signing of Pleadings, Motions and Other Papers; Sanctions, provides the following:

The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment. Attorneys or parties who shall bring a fictitious suit as an experiment to get an opinion of the court, or who shall file any fictitious pleading in a cause for such a purpose, or shall make statements in pleading which they know to be groundless and false, for the purpose of securing a delay of the trial of the cause, shall be held guilty of a contempt. If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction available under Rule 215–2b, upon the person who signed it, a represented party, or both.

Courts shall presume that pleadings, motions, and other papers are filed in good faith. No sanctions under this rule may be imposed

even absent evidence that they are reasonable and necessary, and that under this evidence the trial court abused its discretion by awarding excessive attorney's fees. We therefore set aside the judgment against Peggy Glass and modify the remainder of the judgment to eliminate the excessive attorney's fees and the additional monetary sanctions. As modified, we affirm.

The order granting sanctions against Peggy Glass and Neely was entered after Peggy and Dale Glass were granted a divorce based upon a settlement agreement on August 10, 1990.[2] After the divorce, Neely, on behalf of Peggy Glass, filed a motion for new trial, alleging that there was real estate acquired by the parties during their marriage which had not been divided. On September 19, 1990, Neely sent a post-trial settlement offer and a demand that it be immediately accepted; if not accepted, litigation was to be filed against the lawyers representing Dale Glass, his mother, a Gonzales bank and a certified public accountant.[3]

The letter was followed with various legal pleadings in the suit filed by Neely, which the court ultimately determined were frivolous, filed in bad faith and solely for

except for good cause, the particulars of which must be stated in the sanction order. "Groundless" for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law. A general denial does not constitute a violation of this rule. The amount requested for damages does not constitute a violation of this rule.

2. The divorce proceedings were instituted by Dale Glass in Gonzales County, represented by Thomas K. Robinson of the Gonzales law firm of Miller, Miller & Robinson. Peggy Glass instituted proceedings in Harris County. When the Harris County court proceedings were determined to be the proper proceedings, Dale Glass retained the services of the Houston law firm of Pope, Shoemake, Selwyn, Kerr & De Nisco.

3. This demand letter, if not the seminal source of all that followed, is significant. The text of the letter, sent to various addresses, is as follows:

Upon your refusal to provide the documents pertaining to the ownership of community property by Dale and Peggy which was required by notice previously served upon your client, in derogation of your responsibilities and obligations pursuant to the Texas Rules of Civil Procedure, it became necessary for me to independently obtain such. Although I am positive copies of same are in your possession, which you have failed and refused to produce as previously requested and required pursuant to the Texas Rules of Civil Procedure, I am enclosing herewith copies of the deeds whereby interests in real property were acquired by Dale and Peggy during their marriage. While I do not have a copy of documentation pertaining to their stock ownership in American National Bank, I shall be obtaining same shortly.

This is a particularly opprobrious situation, in that Dale Glass and both attorneys representing him have engaged in a scheme to defraud Peggy Glass of her community interest in not only cash proceeds from insurance policies, but ownership interests in realty and minerals and in bank stock as well. So far as I am concerned, there may be additional property which may be subject to division in connection with the above-referenced divorce. In view of your knowledge of the existence of this property and your failure to disclose same to me upon my inquiry, I now understand the reason for your nervous behavior the last two occasions on which we met to discuss this matter. It further explains why your client and his family have refused to abide by any agreement or code of ethics in connection with concluding the above-referenced divorce.

Furthermore, I am surprised that someone who purports to have been a friend of Peggy, who grew up with her, and has known her all her life would engage in a conspiracy and a scheme to defraud her of her legitimate interests in her marital estate. I believe that not only you, but Mr. Tom Robinson, are guilty of fraud and conspiracy to defraud. Accordingly, action will be taken against you to recover not only her property but the attorney's fees and other expenses incurred by Peggy Glass in connection with said conspiracy.

Ergo, please be advised that I have been directed by Peggy A. Glass to initiate an action against you, your law firm, Pope, Shoemake, Selwyn, Kerr & De Nisco, for fraud, conspiracy to defraud, and possible civil RICO violations involving the transmission of fraudulent misrepresentations through means of interstate commerce.

Should you wish to avoid the necessity of litigation and concomitant grievances and motions for sanctions and contempt as a consequence of your despicable conduct, I am authorized to extend you the following settlement offer:

(1) Any and all real property, or interests therein, which was acquired by Dale Glass during the marriage will be conveyed, *en toto*, to Peggy A. Glass;

(2) Any and all mineral interests acquired by Dale Glass during the marriage will be conveyed, *en toto*, to Peggy A. Glass;

harassment and delay.[4] The attorneys for Dale Glass and their law firms filed responsive pleadings and motions for sanctions. The trial court found against Peggy Glass and Neely, granted sanctions in amounts greater than those sought, and sua sponte enjoined Peggy Glass from filing any pleading in any court in Texas until all monetary sanctions were paid. The monetary sanctions awarded against Peggy Glass and Neely, jointly and severally, totaled $64,650.00:

> (3) Any and all bank stock in American National Bank or any other banking institution, shall be conveyed, *en toto*, to Peggy A. Glass;
> (4) Any and all insurance proceeds from the theft of Peggy A. Glass' 1988 BMW will be delivered to her, *en toto*;
> (5) Clear title to Peggy A. Glass' 1990 BMW will be delivered to her;
> (6) The townhome situated at 2854 Holly Hall, will be conveyed, *en toto*, to Peggy A. Glass;
> (7) Any and all cash funds remaining from the money market account and any certificates of deposit in the possession of Dale S. Glass will be conveyed, *en toto*, to Peggy A. Glass;
> (8) All china, crystal and other wedding gifts will be conveyed, *en toto*, to Peggy A. Glass, same being confirmed through delivery of the bridal registry which reflects not only the gifts but the person who gave such item to the parties upon their marriage;
> (9) Recovery of all costs incurred in connection with the referenced divorce action;
> (10) Attorney's fees incurred in the referenced divorce action in the amount of $50,000.00;
> (11) A permanent injunction precluding any contact of any nature whatsoever by Dale Glass, Sally or Sam Glass, with Peggy A. Glass or any family member of Peggy A. Glass.
> If the above settlement offer is not accepted by you immediately, the following shall occur:
> (1) Litigation will be initiated against the following-described individuals for their fraudulent conduct and their conspiracy to defraud Peggy A. Glass of her marital property interests, together with actions for breach of fiduciary duties, breach of good faith and fair dealing, breach of contract, civil RICO and DTPA violations, conversion, as well as any other cause of action extant as a consequence of their actionable conduct:
> (a) Dale S. Glass
> (b) Simon W. Hendershot, III
> (c) Pope, Shoemake, Selwyn, Kerr & De Nisco
> (d) Lou Glass
> (e) American National Bank
> (f) Thomas K. Robinson

> $45,000.00 to the law firm of Pope, Shoemake, Selwyn, Kerr & De Nisco
> $9,650.00 to the law firm of Miller, Miller & Robinson
> $10,000.00 additional sanctions to Dale Glass and both law firms.[5]

With this factual framework, we turn to the issues presented on appeal.

## OPEN COURTS VIOLATION

■ The open courts provision of the Texas Constitution mandates that the state

> (g) Miller, Miller & Robinson
> (h) Greg Peterek
> (2) Grievances with the State Bar, as well as contempt and sanctions motions, will be initiated against Simon W. Hendershot, III, Pope, Shoemake, Selwyn, Kerr & De Nisco, Thomas K. Robinson, and Miller, Miller & Robinson, as a consequence of their intentional and willful fraudulent conduct violative of the Texas Rules of Civil Procedure and the Code of Professional Responsibility by intentionally refusing to produce documents required to be produced through discovery and for the commission of active misrepresentations;
> (3) Grievance actions will be initiated against Dale S. Glass with the appropriate state regulatory agency seeking to rescind the license of Dale S. Glass to practice medicine as a consequence of his fraudulent conduct and commission of perjury at his deposition on April 17, 1990, in the above-referenced action.
> Please be advised that if I do not hear from you by 5:00 o'clock p.m. on Wednesday, September 19, 1990, agreeing to the terms hereof, I shall be left no recourse other than to pursue the course of action indicated hereinabove.
> Finally, I demand a copy of your malpractice insurance policy so as to determine whether the intentional and negligent infliction of emotional distress and other conduct in which you have engaged, on behalf of your law firm and your client, is an insurable incident under such policy. Additionally, I am transmitting copies of this demand letter to each partner of your law firm so as to place them on notice of the claims to be asserted against not only you, but the firm of Pope, Shoemake, Selwyn, Kerr & De Nisco as well.

4. These pleadings included documents styled motion for sanctions and for an order of contempt, amended motion for new trial, first amended original petition for divorce, first supplement to petitioner's amended motion for new trial, supplemental exhibits to petitioner's amended motion for new trial, and supplement to petitioner's motion for new trial.

5. The law firms had pled for attorney's fees of $25,000.00 and $5,000.00, respectively.

courts shall be open to all persons. The relevant part of Article I, § 13 provides that: "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. The trial court's injunctive order—not pled for or sought by any party and attacked as lacking evidentiary support—directed that:

> ORDERED, ADJUDGED AND DE-CREED that PEGGY ANN GLASS is enjoined from filing any cause of action or other pleading whatsoever, in any state court in the State of Texas until all monetary sanctions ordered herein are paid, in full, with interest and proof of payment furnished to the 308th Judicial District Court of Harris County, Texas....[6]

The open courts provision contained in Article I, § 13 traces its origins to the Magna Carta. *See LeCroy v. Hanlon,* 713 S.W.2d 335, 339 (Tex.1986).[7] The right of access to the courts has been at the foundation of democracy in this country, and every Texas Constitution has contained the same open courts provision. *Id.* at 339. This provision guarantees all Texans the right to redress their grievances in court. *Id.* at 341; *Nelson v. Krusen,* 678 S.W.2d 918, 921 (Tex.1984). With the meaning of this provision established, ordinarily it might be appropriate to determine whether any state purposes outweigh Peggy Glass's constitutional right to access to the courts. Here, however, no state purpose or policy is shown to be served that might be weighed against the right to open courts. We therefore hold that the court's injunctive sanction against Peggy Glass violates the open courts provision and that part of the court's order is unconstitutional.

## CLIENT VERSUS ATTORNEY MISCONDUCT

■ The trial court and the attorneys seeking sanctions against Peggy Glass and Neely make no distinction between the conduct of the client and that of the attorney. In the court's findings of fact, the court properly distinguishes between the client and attorney, finding in numerous instances that, "George R. Neely filed *on behalf* of PEGGY ANN GLASS" (emphasis added) frivolous pleadings in "bad faith with malice" and "solely for the purposes of harassment and delay." Later, the court confuses the conduct of client and attorney by referring to the "conduct of George R. Neely and PEGGY ANN GLASS" in the filing of pleadings after the divorce judgment. The trial court's confusion of the conduct of Peggy Glass with that of her attorney led the court to err. Nowhere in its findings of fact did the trial court find that Peggy Glass did anything other than what her attorney did on her behalf. Indeed, no evidence was adduced which tended to show that Peggy Glass did anything except rely on her attorney's advice.

Although the attorneys seeking to uphold the sanctions against Peggy Glass say things such as "they filed" various documents, the evidence is clear. Peggy Glass filed nothing in this case.[8] The trial court erred in holding Peggy Glass culpable for the acts of her attorney. A party should not be punished for counsel's conduct unless the party is implicated apart from having entrusted its legal representation to counsel. *Transamerican Natural Gas v. Powell,* 811 S.W.2d 913, 917 (Tex.1991). Here, the punishment meted out is clearly for counsel's misconduct, namely the filing of pleadings in violation of Rule 13 of the Texas Rules of Civil Procedure. To punish Peggy Glass for her counsel's misconduct

---

**6.** This injunction is attacked as lacking evidence to support it. While we find no such evidence, we do not pass on the attacks upon the lack of evidence because of our holding that the order unconstitutionally denies Peggy Glass access to the courts of Texas.

**7.** *See also* JAMES C. HARRINGTON, OUR TEXAS BILL OF RIGHTS 13–14 (1991), discussing the open courts provision and citing *Lucas v. United States,* 757

S.W.2d 687 (Tex.1988); *LeCroy v. Hanlon,* 713 S.W.2d 335, 339 (Tex.1986); and *Sax v. Votteler,* 648 S.W.2d 661 (Tex.1983), as significant decisions recognizing the importance of the open courts provision.

**8.** Peggy Glass did sign an affidavit attached to one of the pleadings filed by her attorney, but no contention is advanced that that act is sufficient to uphold sanctions against her.

under these circumstances is clearly unjust; the trial court erred in imposing sanctions against her.

## ATTORNEY'S FEES AS SANCTIONS

■ Sanctions may be imposed for violation of Rule 13 in the manners provided in Rule 215(2)(b) of the Texas Rules of Civil Procedure.[9] The latter rule provides that the court may require the party failing to obey an order or the attorney advising him, or both, to pay the reasonable expenses, including attorney's fees, caused by the failure. The amount of fees to be awarded an attorney is solely within the discretion of the trial court and may not be set aside except upon a showing of abuse of discretion. *Brantley v. Etter*, 677 S.W.2d 503, 504 (Tex.1984).

■ Peggy Glass and Neely contend that *Brantley* simply means that the award of attorney's fees is within the sound discretion of the trial court and that it does not mean that the court can award such fees without evidence. They contend that because there is no evidence to support the $45,000.00 attorneys' fees awarded to Pope, Shoemake, Selwyn, Kerr and De Nisco, and no evidence that any of the attorneys' fees were reasonable and necessary, those attorneys' fees must be set aside. In *Firestone Photographs, Inc. v. Lamaster*, 567 S.W.2d 273, 277–78 (Tex.Civ.App.—Texarkana 1978, no writ), we held that the choice of the appropriate sanctions is for the trial court to determine, and so long as the sanctions are within the authority vested in the trial court, they will not be overturned unless they constitute a clear abuse of discretion. *Id.* We also held that a judgment is not invalid because a party

fails to prove his attorney's fees where the judgment is not one for earned attorney's fees, but rather a judgment imposing attorney's fees as sanctions. *Id.* The amount of attorney's fees awarded *as sanctions* for discovery abuse is within the sound discretion of the trial court and will only be set aside upon a showing of clear abuse of that discretion. *Brantley v. Etter*, 677 S.W.2d at 504. Proof of the necessity or reasonableness of attorney's fees is not required when such fees are assessed as sanctions. *Id.; Allied Assoc. v. INA County Mut. Ins.*, 803 S.W.2d 799, 799 (Tex.App.—Houston [14th Dist.] 1991, no writ).

## DISCRETION ABUSE IN ATTORNEY'S FEES AWARD

The total monetary sanctions included awards of legal fees of $45,000.00 to one law firm and $9,650.00 to another for their responses to Neely's post-judgment pleadings. These are substantial legal fees for this proceeding, in which the gross value of the estate of the parties was about $60,-000.00.

■ The due process clause, as applied to sanctions, mandates a reasonable relationship between the harm done and the sanctions assessed. *Insurance Corp. of Ireland, Ltd. v. Compagnie Des Bauxites de Guinea*, 456 U.S. 694, 707, 102 S.Ct. 2099, 2106–07, 72 L.Ed.2d 492, 504 (1982). The lack of a reasonable relationship between the two constitutes an abuse of discretion. And, whether the imposition of sanctions is just is measured by two standards: (1) a direct relationship must exist between the offensive conduct and the sanctions imposed; and (2) just sanctions

---

**9.** Tex.R.Civ.P. 215(2)(b)(8) provides:

    b. *Sanctions by Court in Which Action is Pending.* If a party or an officer, director, or managing agent of a party or a person designated under Rules 200–2b, 201–4 or 208 to testify on behalf of a party fails to comply with proper discovery requests or to obey an order to provide or permit discovery, including an order made under paragraph 1 of this rule or Rule 167a, the court in which the action is pending may, after notice and hearing, make such orders in regard to the failure as are just, and among others the following:

    ....

    (8) In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him, or both, to pay, at such time as ordered by the court, the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust. Such an order shall be subject to review on appeal from the final judgment.

must not be excessive—the punishment must fit the crime. *Transamerican Natural Gas Co. v. Powell,* 811 S.W.2d at 917. The authority for a district court to impose sanctions should be exercised cautiously and judiciously. *See Braden v. Downey,* 811 S.W.2d 922, 930 (Tex.1991). With these guidelines in mind, we now review the monetary sanctions imposed in light of the circumstances present.

█ The amount of fees awarded here, coupled with the absence of any evidence that they are reasonable and necessary, brings into question the justness of the amount awarded as sanctions. As indicated, this was originally a judgment based upon a compromise settlement agreement. Each of the Glasses was represented by one attorney and, probably, until the time of the hearing on post-trial motions, few fees were earned or paid. After Neely filed his motion for new trial and other post-judgment pleadings, the attorneys opposing those pleadings gravitated to this proceeding as if drawn by a magnet. The law firm representing Dale Glass assigned seven costly lawyers to pursue this matter.[10] To assist in combating allegations found to be obviously frivolous, several attorneys from another firm, Miller, Miller & Robinson, of Houston, also joined in the proceedings. In all, it appears that seven to eleven attorneys joined forces to counter the frivolous pleadings filed by Neely. In the absence of any evidence of the reasonableness or necessity of attorneys' fees in-

curred in responding to the allegations of Neely after judgment, the award of such a large amount of fees relative to the amount in controversy constitutes a clear abuse of discretion.[11]

█ There is no evidence that a $45,-000.00 fee was incurred or that any particular amount was reasonable and necessary. Because this award is excessive based on the evidence and far exceeds any reasonable relationship to the harm done, we modify the judgment to halve that fee to the sum of $22,500.00, which sum bears a reasonable relationship to the harm done. Evidence supports the award of $9,650.00, which appears to bear a reasonable relationship to the harm incurred.

## ADDITIONAL SANCTIONS

█ Peggy Glass and Neely further contend that there was no failure on their part which would justify the award of an additional $10,000.00 beyond the attorneys' fees awarded.[12] Numerous post-divorce filings by Neely were on extremely tenuous grounds. Under this record, the sanctions in the form of attorneys' fees, as modified, are sufficient in relationship to the harm done. There appears to be no reason why Dale Glass and the two law firms should share a judgment of an additional $10,-000.00 against Neely. We conclude that this additional sanction does not bear a reasonable relationship to any harm done, and we set aside that part of the order.

10. Entering the foray to combat what was considered by each of the lawyers, the trial court and this Court to be frivolous allegations, the firm representing Dale Glass assigned T. Turner Pope, III, at $225.00 an hour; James H. Shoemake, at $200.00 an hour; Douglas M. Selwyn, at $200.00 an hour; Gerald P. De Nisco, at $200.00 an hour; Raymond C. Kerr, at $225.00 an hour; Joe Rentz, at $300.00 an hour; and Simon W. Hendershot, III, at $125.00 an hour.

11. In the partial dissenting opinion, there is an indication that numerous defendants had been sued in this case and that each party should be entitled to be represented by counsel of choice. The record does not show any additional "defendants" in the case or that the numerous attorneys represented additional defendants. The dissenting opinion's view that Exhibit 18 shows the need for many lawyers to represent numer-

ous defendants is belied by the exhibit itself. Exhibit 18, a bill from the firm of Pope, Shoemake, Selwyn, Kerr & De Nisco in the amount of $31,875.00 and dated October 5, 1990, is addressed *solely* to Dr. Dale Glass and pertains to his and Peggy Glass's divorce proceedings.

12. Peggy Glass and Neely attack this additional $10,000.00 monetary sanction as not being authorized by Rule 13 or Rule 215. The reply to this is that Texas courts have held that imposing sanctions does not violate the Texas Constitution, citing *Woodruff v. Cook,* 721 S.W.2d 865 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). *Woodruff* does not assist in determining this significant legal question presented by the attack on the $10,000.00 additional sanctions as being unauthorized. Because we set aside this particular sanction, we decline to address this question.

We reverse the order of the trial court insofar as it imposes any sanctions against Peggy Glass; we set aside the additional sanction of $10,000.00 awarded to Dale Glass and the two law firms; we modify the award of attorneys' fees so as to award $22,500.00 to the firm of Pope, Shoemake, Selwyn, Kerr & De Nisco, and $9,650.00 attorneys' fees to the firm of Miller, Miller & Robinson. Any points of error not specifically determined or made moot by our resolution of the legal issues are overruled. As modified, we affirm that part of the judgment awarding attorneys' fees as sanctions against Neely.

It is so ordered.

GRANT, Justice, concurring in part and dissenting in part.

I concur with the majority except for its reduction of the monetary attorney's fees sanctions against George Neely.

The succinct portion of the majority opinion addressing the open courts violation suggests that any type of injunctive sanction that prohibits the filing of pleadings or other documents in any State court would be a violation of Article I, § 13 of the Texas Constitution.

The open courts provision of the Texas Constitution declares that our state government shall not ration justice but shall provide an open forum to right wrongs and provide remedies for legitimate claims. This broad policy provision, however, does not prohibit sanctions against those who abuse the judicial process. Such sanctions, however, should be specific and should be limited to penalties and prohibitions having a reasonable relationship to the harm committed. Injunctive relief should be tailored to protect the courts and innocent parties, while preserving the legitimate rights of the litigants. *Farguson v. MBank Houston, N.A.,* 808 F.2d 358 (5th Cir.1986). A broad order may be appropriate if a litigant is engaged in a wide-spread practice of harassment against different people. *See In re Martin–Trigona,* 737 F.2d 1254 (2d Cir.1984). Such generalized sanction against Peggy Glass was not warranted in the present case because the only abuse that was shown involved this case and the parties, attorneys, and others involved herein. Thus, the injunctive sanction was overly broad and violated Article 1, § 13 of the Texas Constitution.

The majority opinion emphasizes that the original divorce proceeding involved an estate of about $60,000. They further condemn the sanction proceeding for having seven costly lawyers from one firm to counter the frivolous pleadings. It must be pointed out that after the amended pleadings were filed, this was no longer a simple divorce action; numerous respondents, including attorneys, a CPA, and American National Bank had been named in the suit, which requested damages and judgment from them for more than five million dollars.[13] To say that one attorney

---

**13.** The following is an excerpt from the First Amended Original Petition of Peggy Glass:

5.6 Petitioner requests judgment of, from and against the Respondents, jointly and severally, as delineated hereinbelow:

(1) Judgment of, from and against Respondents Glass, Hendershot, the Pope firm, Robinson, and the Miller firm, for commission of fraud, in the amount of $100,000.00, jointly and/or severally; together with, or in the alternative,

(2) Judgment of, from and against Respondents Glass, Hendershot, the Pope firm, Robinson, Robinson, and the Miller firm, for commission of conspiracy to defraud, in the amount of $100,000.00, jointly and/or severally; together with, or in the alternative,

(3) Judgment of, from and against Respondents Lou Glass and/or American National Bank for commission of fraud, in the amount

of $100,000.00, jointly and/or severally; together with,

(4) Judgment of, from and against Respondents Lou Glass and/or American National Bank for commission of conspiracy to defraud, in the amount of $100,000.00, jointly and/or severally; together with, or in the alternative,

(5) Judgment of, from and against Respondents Lou Glass and/or American National Bank for violations of the Texas Deceptive Trade Practices–Consumer Protection Act, in the amount of $100,000.00, jointly and/or severally; together with, or in the alternative,

(6) Judgment of, from and against Respondents Lou Glass and/or American National Bank for commission of conversion, in the amount of $100,000.00, jointly and/or severally; together with, or in the alternative,

(7) Judgment of, from and against Respondent Peterek for commission of professional

should have continued to represent all of the parties is contrary to the fundamental right of each party to be represented by counsel of choice.

Because of the multiplicity of filings by petitioners and the responses and cross-motions by respondents, the hearing lasted for four days. The court heard and disposed not only of matters raised by petitioners, but also the motions for sanctions and costs raised by the respondents. The transcript contains almost 1,200 pages and the statement of facts almost 700 pages. The joining by the appellant of three lawyers, a CPA, two law firms and a bank as parties directly contributed to the length and complexity of the proceedings and justified the appearance of counsel representing the various respondents.

The trial court dismissed with prejudice plaintiff's first amended original petition for divorce as sanctions for violation of Tex.R.Civ.P. 13. This amendment was filed under the same file number as the original divorce proceeding. The amended petition alleged numerous causes of action against the various respondents, including fraud, conspiracy to defraud, violation of fiduciary

relationship, breach of obligation of good faith and fair dealing, breach of contract, credit defamation, conversion, professional malpractice, and violation of the Deceptive Trade Practices Act.

The majority opinion states that, "There is no evidence that a $45,000.00 fee was incurred." To so state is to ignore the record. Exhibit 18 is a detailed summary of the hours worked by the various attorneys for the appellees in the case, the hourly rate for each attorney, the total amount claimed for each attorney, and a total of the combined claim, which amounted to $31,875, plus expenses of $373. Later in the hearing, there was testimony about additional hours worked and expenses incurred by the attorneys as a result of the hearings then in progress. The testimony raised the total attorney's fees for the Pope firm to $45,863.

Thomas K. Robinson, an attorney who initially represented Dale Glass in this matter, testified that he had performed legal services for Dale Glass, as had other attorneys in his firm of Miller, Miller & Robinson. He further testified about the hourly fees involved, the total time spent in repre-

malpractice, in the amount of $100,000.00; together with,

(8) Judgment of, from and against Respondents Lou Glass and/or American National Bank for common law and statutory breach of obligation of good faith and fair dealing, in the amount of $100,000.00, jointly and/or severally; together with, or in the alternative,

(9) Judgment of, from and against Respondents Lou Glass and/or American National Bank for breach of contract, in the amount of $100,000.00, jointly and/or severally; together with, or in the alternative,

(10) Judgment of, from and against all Respondents hereto for the intentional and/or negligent infliction of emotional distress, in the amount of $100,000.00, jointly and/or severally; together with,

(11) Judgment of, from and against Respondents Lou Glass and/or American National Bank for commission of credit defamation, in the amount of $100,000.00, jointly and/or severally; together with, or in the alternative,

(12) Punitive and/or exemplary damages against Respondent Glass in the amount of $500,000.00; together with,

(13) Punitive and/or exemplary damages against Respondent Hendershot in the amount of $500,000.00; together with,

(14) Punitive and/or exemplary damages against Respondent the Pope firm in the amount of $500,000.00; together with,

(15) Punitive and/or exemplary damages against Respondent Robinson in the amount of $500,000.00; together with,

(16) Punitive and/or exemplary damages against Respondent the Miller firm in the amount of $500,000.00; together with,

(17) Punitive and/or exemplary damages against Respondent Lou Glass in the amount of $500,000.00; together with,

(18) Punitive and/or exemplary damages against Respondent American National Bank in the amount of $1,000,000.00; together with,

(19) Moratory interest on all damages to Petitioner from the date recognized by law as the date of accrual of said damages through the rendition of a final judgment herein; together with,

(20) Costs of court incurred by Petitioner herein; together with,

(21) Post-judgment interest at the maximum lawful rate from the entry of judgment until same be paid, *en toto;* together with,

(22) Attorney's fees in the amount of $50,-000.00; together with,

(23) Such other and further relief, whether at law or in equity, to which Petitioner may be justly entitled.

senting Dale Glass, the type of work he performed, and the amount of other expenses. These totaled $9,250 in attorney's fees and $353.47 in expenses. Neely and Glass do not complain about the additional attorney's fees awarded to Thomas K. Robinson and his law firm.

The appellants challenged the admissibility of respondents' Exhibit 18, and that contention should be addressed. Exhibit 18 detailed the legal billing incurred by appellees as a result of appellants' filing the motion for new trial and other documents and motions after the decree of divorce. Neely and Glass contend that Exhibit 18 was not admissible because one of the elements specified for admissibility of a business record was omitted. Appellants specifically complain that the appellees did not prove that it was the regular practice of the business to make this record. Tex. R.Civ.Evid. 803(6) includes a requirement that the record be kept in the course of a regularly conducted business activity and that it was the regular practice of that business activity to make the memorandum, report, record, or data compilation.

The record shows that Dale Glass's attorney, De Nisco, laid the predicate required by Rule 803(6) by asking Hendershot, Dale Glass's counsel, *whether the invoice was a part of Pope, Shoemake, Selwyn, Kerr & De Nisco; whether it was maintained in the regular course of business for that firm;* whether the entries contained in the invoice were made by persons having knowledge of the facts contained therein; and whether the entries were made at or near the time of the occurrence. The witness answered in the affirmative to each question. This evidence sufficiently shows that the document was kept in the course of regularly conducted business activities and that it was a regular practice to make this kind of document. The trial court properly admitted Exhibit 18.

I would affirm the attorney's fees sanction against Neely.