Opinion filed February 21, 2014



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00034-CV

_____

**ALFREDO A. GALINDO AND IDALIA M. GALINDO;
ELIZABETH BOHORQUEZ; AND MICHAEL WHITMIRE,**
Appellants

**V.**

**PROSPERITY PARTNERS, INC. ET AL., Appellees**

On Appeal from the 201st District Court

Travis County, Texas

Trial Court Cause No. D-1-GN-05-000574

**O P I N I O N**

Appellants Alfredo A. Galindo and Idalia M. Galindo filed suit in 2005 against Appellees Prosperity Partners, Inc.; Comet Financial Corporation; Great West Life & Annuity Insurance Company; and Bransen Incorporated. The

Galindos added Appellees Midland States Life Insurance Company and Randall S. Simoes as defendants in amended petitions. Appellants Elizabeth Bohorquez and Michael Whitmire are attorneys who represented the Galindos in the proceedings below. In 2011, the trial court dismissed the Galindos' suit based on the failure to pay discovery sanctions that the trial court had previously imposed.

The Galindos, Bohorquez, and Whitmire appeal the trial court's order of dismissal as well as the underlying sanctions order. We reverse and render in part and reverse and remand in part.

*Background*

According to the Galindos' allegations in their petition, Alfredo Galindo won $4,000,684 from the Texas lottery in 1995. His winnings were to be paid in annual installments of $200,000 for a period of twenty years. Prosperity Partners, Inc. (PPI) approached Galindo and offered a service to Galindo that would convert all or part of Galindo's winnings into a tax-free lump sum. After PPI approached Galindo on several other occasions, Galindo and PPI entered into an agreement in which PPI promised to arrange a loan payable to Galindo in the amount of $600,000, secured by payment of the net portion of nine of the twenty annual installments. Bransen Incorporated, formed by Randall S. Simoes, was the lender in the transaction; the loan was funded by Midland States Life Insurance Company. In 2000, PPI again approached Galindo and informed him of possible tax consequences from the 1996 loan. PPI offered to repaper the loan. Subsequently, Galindo entered into an agreement with PPI in which Galindo was to assign five of the previously pledged annual installments to PPI in exchange for a payoff of the 1996 loan and $101,800 in cash. Under the agreement, PPI would assign the annual installments to Comet Financial Corporation, and Comet would assign the installments to Great West Life & Annuity Insurance Company.

2

Galindo, PPI, Comet, and Great West applied with the trial court for an order approving the assignments of the annual installments pursuant to Section 466.410 of the Texas Government Code. TEX. GOV'T CODE ANN. § 466.410 (West 2012). The court entered an order approving the assignments on February 20, 2001.

The Galindos alleged that, in 2003, they received a 1099 tax form from Comet that reported that Galindo had received over $757,000 in income in 2001 as a result of the assignment. The Galindos filed suit in 2005 and sought to set aside the 2001 court order through a bill of review. Specifically, the Galindos contended that they were fraudulently induced to sign the 2001 agreement without the advice of independent legal counsel and an independent financial advisor, as required by the Texas Lottery Act. The Galindos also filed suit for usury, common-law fraud, violations of the Texas Deceptive Trade Practices Act, and negligence.

Appellees sought the production of documents maintained by Sylvester Jaime and Tom Quinones, attorneys who had represented the Galindos in connection with the 1996 loan and the 2001 assignment, respectively. Bohorquez filed objections and sought a protective order in which she claimed that the documents were protected under the attorney-client and work-product privileges. Appellees filed a motion to compel the production of the requested documents and argued that, under the offensive use doctrine, the Galindos were not permitted to assert privileges for information that was outcome-determinative of the affirmative relief that they sought. *See Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105, 108 (Tex. 1985) ("A plaintiff cannot use one hand to seek affirmative relief in court and with the other lower an iron curtain of silence against otherwise pertinent and proper questions which may have a bearing upon his right to maintain his action."). Appellees also moved for the court to order that the privileges could not be asserted for the oral depositions of Quinones or Jaime, as long as the questions

asked were limited to information that pertained to the 1996 and 2001 transactions. The trial court ordered the Galindos to produce the documents requested but did not rule on whether the privileges could be asserted at the oral depositions.

The Galindos produced the documents as ordered. Bohorquez, who was the attorney representing the Galindos at Jaime's deposition, asserted the attorney-client privilege as to any questions regarding a letter Jaime sent to Galindo in August 1996. The letter explained the details of the proposed transaction with PPI and was one of the documents that the court ordered the Galindos to produce. Appellees' counsel reminded Bohorquez that the trial court had ordered the Galindos to produce the letter and informed Bohorquez that he would go back to the trial court to seek an order that compelled Jaime to answer questions regarding the letter and that awarded attorney's fees and costs.

Whitmire, who was the attorney representing the Galindos at Quinones's deposition, also asserted the attorney-client privilege when Appellees asked Quinones questions regarding his representation of Galindo in connection with the 2001 assignment. Whitmire noted that his understanding was that the trial court made a ruling on the production of the documents but did not order Quinones to answer any questions and, thus, that Quinones was entitled to assert the privilege. He believed that the trial court had provided Appellees with an opportunity to submit questions for the court's approval prior to the deposition and that, because Appellees had not sought approval he would not waive the privilege on behalf of Galindo. Appellees' counsel informed Whitmire that he would seek a ruling from the court and seek sanctions. Based on the privilege, Quinones did not answer questions regarding what was said during the first conversation he had with Galindo; whether Galindo complained to him about the loan payoff being more than $600,000; whether Galindo provided him with information regarding the Midland States lien; whether he knew if Galindo, or anyone on Galindo's behalf,

4

checked to see if the payoff amount calculated by PPI was correct; whether he had given Galindo any advice on whether the 1996 transaction was a loan or an assignment of lottery payments; and whether he had given Galindo any advice on whether the transaction was usurious.

Appellees also took the deposition of Joseph Peralta, who had prepared income tax returns for the Galindos. Bohorquez represented the Galindos at Peralta's deposition and asserted the accountant-client privilege when Peralta was asked what sources of income Galindo reported to him for the preparation of his 1997 return. Based on the advice of Peralta's counsel, Peralta would not produce, without the Galindos' consent, the incomplete 1997 tax return that he began preparing for Galindo, nor would he answer any questions regarding his communications with Galindo.

Appellees also noticed the deposition of Jose Angel Garcia, a certified public accountant who provided tax and accounting advice to the Galindos regarding the 2001 assignment. Garcia's attorney sent Appellees a letter that Garcia could not disclose any such advice without the consent of the Galindos. During Galindo's deposition, Bohorquez advised Galindo not to consent to Peralta or Garcia disclosing information regarding his tax liability.

Appellees filed a motion to compel Garcia, Peralta, Quinones, and Jaime to answer questions relating to the advice that they gave the Galindos on the 1996 transaction and 2001 assignment. Appellees also sought an order that required the Galindos and/or their counsel to compensate Appellees for all of their attorneys' fees and expenses incurred in retaking the depositions of Peralta, Quinones, and Jaime. During the hearing on the motion to compel, Bohorquez argued that she had made the assertions in good faith and believed that, because Appellees had not submitted questions for the court's prior approval, the Galindos were entitled to assert the attorney-client and accountant-client privileges. The court responded

that, although it might have said Appellees could submit questions, Appellees did not have to submit questions prior to the depositions. As to whether the court's previous order waived the privilege with respect to the questions Appellees asked during the depositions, the court stated:

> What I did do was sign an order that certainly waived the privilege with respect to certain written documents and -- both in 2000 and in '96, which implied a waiver, logically that there would be a waiver necessarily of the attorney/client privilege that would logically extend not only to questions about those documents but would also extend logically to any questions about the knowledge that Mr. Galindo would have obtained whenever his cause of action is based on his claim of misrepresentation or failure to advise, all of those things.
>
> So apparently that was not understood as being a requirement that those questions be answered in the deposition. I don't know if it goes far enough for a dismissal, but as we know, that is the last resort. And I am not going to take that last resort. But I need to enter an order that makes it clear that questions along the lines of those I've just referred to need to be answered without the assertion of the privilege. And there needs to be expense borne by plaintiffs in this case for re-deposition.

Following the hearing, the trial court entered a sanctions order against the Galindos and their counsel. The trial court did not name any individual attorneys in the order. The trial court ordered that the Galindos' claims of attorney-client, tax preparer, and accountant privileges were waived under the offensive-use doctrine established in *Ginsberg*, 686 S.W.2d 105, and that the Galindos could not assert the privileges as to any communications they had with their advisors from 1995 through February 23, 2005, that related to Galindo's lottery winnings or any transactions at issue in the suit. The trial court's order required the Galindos and their counsel to pay $10,600 to Appellees' counsel within four days of the order—for attorneys' fees incurred relating to the hearing on the motion to compel. The

6

order also required the Galindos to make Galindo, Peralta, Jaime, and Quinones available for re-deposition as soon as practical and required the Galindos and/or their counsel to pay Appellees' counsel $12,204.90 for fees and costs associated with each of the four depositions that Appellees had to retake. The $12,204.90 was to be paid to Appellees' counsel one week prior to each deposition.

Whitmire, on behalf of the Galindos, filed a motion for emergency stay and motion for reconsideration in which he argued that the sanctions were cost-prohibitive and threatened the Galindos' ability to continue with the litigation. The Galindos, Bohorquez, and Whitmire attached affidavits to the motion in which they stated that they could not pay the sanctions. Whitmire, on behalf of the Galindos and Bohorquez, sought mandamus relief in the Third Court of Appeals. The Third Court granted an emergency motion for temporary relief, but subsequently denied the petition for writ of mandamus.

After the mandamus relief was denied, Appellees noticed the depositions of Galindo, Peralta, Quinones, and Jaime. Whitmire, on behalf of the Galindos, filed a motion to quash and argued that the notices violated the emergency stay. The trial court denied the motion to quash. Appellees again noticed the depositions of Quinones and Jaime, and Whitmire again filed a motion to quash and urged the court to reconsider the sanctions order because of Appellants' inability to pay the sanctions. The trial court denied the motion. Appellees made a final attempt to notice the depositions and requested prompt payment of the sanctions as ordered. Whitmire responded that the Galindos and their counsel could not pay the sanctions. Appellees canceled the depositions and filed a motion to dismiss based on Appellants' failure to pay the sanctions.

The trial court entered an order in which it granted the motion to dismiss. The trial court ordered, among other things, that the Galindos' claims against Appellees be dismissed with prejudice. The Galindos, Bohorquez, and Whitmire

7

each filed a notice of appeal in the Third Court of Appeals. The appeal was transferred from the Third Court to this court, pursuant to a docket equalization order from the Texas Supreme Court.

*Issues on Appeal*

Generally, Appellants argue that the trial court erred when it entered the initial sanctions order because the sanctions imposed were unjust. Appellants also argue that the trial court erred when it dismissed the Galindos' case for failure to pay discovery sanctions because the sanctions were unjust and precluded the Galindos from pursuing their lawsuit. The Galindos and Whitmire each present two issues for review, and Bohorquez presents four issues.

The Galindos identify their issues presented as (1) the trial court abused its discretion when it dismissed the case and (2) the trial court abused its discretion when it ordered them to pay "front" sanctions that resulted in their inability to obtain redress in the court. The format of their brief does not comport with their issues presented. In their brief, they present three main issues: (1) the sanctions were case-determinative, and no lesser sanction was imposed before their case was dismissed; (2) the sanctions were unjust because they did not relate to offensive conduct; and (3) the sanctions order did not meet the Texas requirements for a case-determinative sanctions order.[1] We will refer to these three issues in disposing of their appeal.

Whitmire argues in his first issue that the sanctions order should not be enforced against him because he was not notified of the hearing and because the order is vague in that it does not order a specific attorney to pay the sanctions. Bohorquez also argues in her first issue that the order is vague and that, because Appellees did not request sanctions against her specifically, she did not receive due process notice. Whitmire asserts in his second issue that the sanctions were unduly

---

[1]We note that these three issues are lettered A., B., and C. in the Galindos' brief.

harsh penalties that were not proportionately tailored to address the complained-of conduct and that the sanctions improperly eliminated the Galindos' right to pursue their litigation.

In Bohorquez's second issue, she contends that the trial court abused its discretion when it imposed sanctions because there was no evidence that counsel improperly asserted privileges on behalf of the Galindos. She argues in her third issue that the trial court also abused its discretion when it imposed the sanctions because the sanctions were excessive and unjust, arbitrary and unreasonable, and outcome-determinative. In her final issue, she alleges that the trial court abused its discretion when it dismissed the case because it failed to consider less stringent sanctions.

### *Discovery Sanctions That Have a Preclusive Effect*

The trial court may impose sanctions on a party who fails to obey a discovery order or who abuses the discovery process. *See* TEX. R. CIV. P. 215.2, 215.3. We review a sanctions order for an abuse of discretion. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). The trial court abuses its discretion if it acts arbitrarily and unreasonably without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). The sanctions imposed must be just. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). In determining whether a sanction is just, we first look to whether a direct relationship exists between the offensive conduct and the sanction imposed. *Id.* We next look to whether the sanction is excessive. *Id.* The sanction should be no more severe than necessary to satisfy its legitimate purposes. *Id.*

Sanctions that are ordered to be paid prior to the entry of a final appealable order can have a preclusive effect on the party's ability to proceed with its case.

*Braden v. Downey*, 811 S.W.2d 922, 929 (Tex. 1991) (orig. proceeding) (citing

*Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 882 (5th Cir. 1988)).

> [I]f a litigant contends that a monetary sanction award precludes access to the court, the district judge must either (1) provide that the sanction is payable only at a date that coincides with or follows entry of a final order terminating the litigation; or (2) make[] express written findings, after a prompt hearing, as to why the award does not have such a preclusive effect.

*Id.* (quoting *Thomas*, 836 F.2d at 882–83 n.23).

The trial court ordered "Plaintiffs and Plaintiffs' counsel" to pay $10,600 to Appellees' counsel for the costs and fees incurred in pursuing the motion to compel and ordered "Plaintiffs and/or Plaintiffs' counsel" to pay $12,204.90 for costs and fees associated with each of the four depositions that Appellees had to retake. The $10,600 was to be paid within four days of the order, and the $12,204.90 was to be paid one week prior to each deposition. The Galindos filed a motion for emergency stay and motion for reconsideration of the sanctions order and argued that the sanctions were cost-prohibitive and threatened their ability to pursue their lawsuit. The Galindos asserted this same argument through motions to quash depositions and their response to Appellees' motion to dismiss for failure to pay the sanctions.

Under *Braden*, once the Galindos contended that the sanctions were cost-prohibitive and precluded their ability to continue with the litigation, the trial court was required to modify the sanctions order to provide that the sanctions were to be paid when a final judgment was entered or to make express findings, after a hearing, as to why the sanctions did not have a preclusive effect. *Id.* The trial court did not modify the sanctions order, and although the trial court did enter a finding in the dismissal order that the Galindos failed to present any admissible evidence of their inability to pay the sanctions imposed, the court did not make

express written findings as to why the award did not have a preclusive effect. Thus, the trial court abused its discretion when it did not comply with the requirements set out in *Braden*.

The purpose behind the requirements in *Braden* is to ensure that an appeal affords a party with an adequate remedy. *Id.* at 929–30. When severe monetary sanctions are deferred until an appealable judgment is rendered, a party, in order to proceed with its lawsuit, is not forced to pay severe monetary sanctions without first having the opportunity to appeal the sanctions order. *Id.* Although we are now in a position to review the sanctions order to determine if it is just, the Galindos' case was dismissed for their failure to pay the sanctions before Appellants had an opportunity to seek review of the order. The trial court dismissed the Galindos' case as a "death penalty" sanction because it found that the Galindos had refused to comply with the monetary sanctions that the court had ordered the Galindos and their counsel to pay. In light of our decision that the trial court failed to comply with the requirements of *Braden*, we also hold that the trial court abused its discretion when it dismissed the Galindos' case for their failure to pay the very sanctions that they contended would preclude them from pursuing their lawsuit. We sustain the Galindos' third issue. We also sustain Whitmire's second issue and Bohorquez's third issue to the extent they argue that the trial court failed to comply with the requirements of *Braden*.

*Direct Relationship with Offensive Conduct*

We now turn to the merits of the initial sanctions order. The Galindos argue that the trial court erred when it ordered them to pay sanctions because they were not the "offenders." When we look to whether imposed sanctions are just, we must first look to whether the sanctions have a direct relationship to the offensive conduct. *TransAmerican Natural Gas Corp.*, 811 S.W.2d at 917. This means that the sanction must be directed against the abuse and visited upon the offender. *Id.* The

11

trial court should determine whether the conduct is attributable to counsel only, to the party only, or to both counsel and the party. *Id.* A party should not be punished for counsel's conduct unless the party is implicated apart from having entrusted its legal representation to counsel. *Id.*

The record does not support an order for sanctions against the Galindos. It does not appear from the record that the Galindos were present at the depositions in which Bohorquez and Whitmire asserted the privileges, nor does it appear from the record that the Galindos were so involved in the litigation that we can impute the actions of the attorneys to them. The trial court noted at the dismissal hearing that, after six years of litigation and numerous hearings, it had never seen the Galindos. In addition, the record shows that Galindo did not understand English and required an interpreter during his deposition. Furthermore, although Galindo refused to give consent for Peralta and Garcia to disclose to Appellees advice that each had given him, he did so on the advice of his counsel. Moreover, Galindo answered all but one of Appellees' questions despite Bohorquez's objections as to attorney-client privilege throughout his deposition. Although the Galindos did hire and release multiple attorneys throughout the case, the record does not show that they were involved with the decision to assert the privileges or that they understood the legal intricacies of whether they had waived privilege under the offensive use doctrine. Therefore, the trial court erred when it ordered sanctions against the Galindos for offensive conduct, if any, committed by their counsel. *See, e.g.*, *Glass v. Glass*, 826 S.W.2d 683, 687–88 (Tex. App.—Texarkana 1992, writ denied) (holding trial court erred when it sanctioned client where the evidence showed that the attorney filed frivolous pleadings on behalf of the client, but the client did nothing more than rely on her attorney's advice).

Appellants also contend that the order is vague in that it did not order sanctions against individual attorneys. The trial court ordered "the Plaintiffs

and/or Plaintiffs' counsel" to pay the fees associated with the depositions and ordered "the Plaintiffs and Plaintiffs' counsel" to pay the fees associated with the motion. Appellants argue that, because the Galindos were represented by a number of different attorneys throughout their lawsuit, the order is vague and does not specify which of the attorneys are liable, nor does it specify whether the responsible attorneys are jointly and severally liable for all of the sanctions.

The record shows that at least six different attorneys represented the Galindos throughout their litigation. By the time the trial court dismissed the case, all of the attorneys had withdrawn from the case or had been discharged by the Galindos. When the conduct at issue in the motion to compel occurred, only one of those attorneys had withdrawn from the case. However, it appears from the record that only Bohorquez and Whitmire asserted the privileges at issue in the motion to compel. Because the order is vague as to which attorney or attorneys must pay sanctions to Appellees, the sanctions do not directly relate to the offenders, if any. The trial court erred when it did not specify which attorneys were liable for the sanctions imposed.

For the reasons discussed above, we reverse the initial sanctions order as to the Galindos, Whitmire, and Bohorquez. We sustain the Galindos' second issue, Whitmire's first and second issues, and Bohorquez's third issue to the extent Appellants argue that the sanctions were unjust because they did not have a direct relationship with the offensive conduct, if any.

*Due Process*

In each of their first issues, Whitmire and Bohorquez contend that their due process rights were violated because Appellees did not specifically seek sanctions against them in their motion to compel. Whitmire also alleges that he did not receive service of the motion or notice of the hearing and did not know that sanctions were possibly being imposed against him until he received a copy of the

13

order.  Because we have reversed the sanctions order, it is not necessary for us to address whether due process was violated.  *See* TEX. R. APP. P. 47.1.

*Summary*

We have held that the trial court erred when it failed to comply with the requirements of *Braden* and, as a result, erred when it dismissed the Galindos' case.  We have also held that the trial court erred when it entered the initial sanctions order.  Based on our holdings, it is not necessary for us to reach the Galindos' first issue or Bohorquez's second and fourth issues.  *See* TEX. R. APP. P. 47.1.

*This Court's Ruling*

We reverse the trial court's order imposing sanctions and its order of dismissal, and we render judgment that Appellees take nothing on their sanctions claims as to the Galindos.  We remand this cause to the trial court for further proceedings consistent with this opinion.


JOHN M. BAILEY

JUSTICE


February 21, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

14